# IN THE COURT OF APPEALS OF IOWA

No. 20-1644
Filed February 17, 2021

**IN THE INTEREST OF J.B.,**
**Minor Child,**

**B.B., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Emily Dean, District Associate Judge.

A mother appeals the termination of her parental rights to her two-year-old son. **AFFIRMED.**

Ryan D. Gerling of Cray Law Firm, PLC, Burlington, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Reyna L. Wilkens of Wilkens Law Office, Fort Madison, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

A mother, Brynn, appeals the termination of her parental rights to her two-year-old son, J.B.[1]  She asks four questions on appeal.  (1) Did the State introduce a series of recorded jail calls (more than ninety minutes in all) without showing they were relevant and material?  (2) Did the State fail to prove by clear and convincing evidence that J.B. could not return home?  (3) Did the State fail to make reasonable efforts to reunify the family?  And (4) is a guardianship with his maternal grandmother the preferred placement for J.B.?  On the first issue, we decline to consider the contents of the recordings in our de novo review of the record.[2]  For the other three questions, we answer "no" and decline to grant relief.  Thus, we affirm the termination ruling.

J.B. was born in May 2018.  One year later, the Iowa Department of Human Services (DHS) removed him from the custody of his biological parents.  Substance abuse and domestic violence prompted the removal.  Brynn was using methamphetamine while caring for the child.  And Mason had assaulted her in the child's presence.  Since removal, Brynn's mother has cared for J.B.

---

[1] The juvenile court's order also terminated the rights of J.B.'s biological father, Mason.  Mason is not a party to this appeal. The State told the court that J.B.'s legal father, Thomas, who was married to Brynn when the child was born, would consent to having his rights terminated.  The termination order does not address Thomas.

[2] In juvenile court proceedings, the overarching standard of review is de novo.  *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).  But we review subsidiary rulings, like those involving the admission of evidence, for an abuse of discretion.  *In re N.N.E.*, 752 N.W.2d 1, 6 (Iowa 2008).  We will reverse an evidentiary ruling only if the record shows prejudice to the complaining party.  *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998).

During the next seventeen months, Brynn made uneven progress in addressing her addiction, as well as her other mental-health challenges.[3] She was in and out of jail on assault and harassment charges from July 2019 through February 2020. After jail, she completed an inpatient substance-abuse treatment program. But her efforts at maintenance fell short. She was discharged from a "sober living community home" in the summer of 2020 when she tested positive for alcohol. Brynn found steady employment as a waitress at a sports bar. But the social worker repeatedly cautioned Brynn that her work setting posed a concern for her sobriety. And indeed, Brynn lapsed from her sobriety when served alcohol by a co-worker at the bar.

The State petitioned to terminate parental rights in October 2020 and amended its petition a month later. The juvenile court held a combined permanency and termination-of-parental-rights hearing in late November and early December. At the time of the hearing, Brynn had twice weekly semi-supervised visits with J.B. at the house where she lived with a co-worker. But the court characterized the visitation as less of a bonding experience and more like "play dates" for J.B. because Brynn did not provide for his daily or long-term needs on a consistent basis. The court terminated Brynn's parental rights under Iowa Code section 232.116(1)(h) (2020). She now challenges that termination decision.

***Evidentiary challenge.*** Brynn first objects to the juvenile court's acceptance into evidence of ten recorded conversations between her and Mason, who was in jail. The calls, which occurred in October and November 2020, each

---

[3] Brynn testified to taking medication for a major depressive disorder, attention-deficit hyperactivity disorder, and a generalized anxiety disorder.

lasted between five and fifteen minutes. At trial, the State argued the conversations were admissible because both Brynn and Mason "claimed to have either not been speaking or barely speaking and stated that they were no longer in a relationship as encouraged by DHS, and . . . the phone calls will show that that is not, in fact, the case." The court overruled Brynn's objection and admitted the recordings.

Iowa Code sections 232.96 and 232.99 govern the admissibility of evidence in child-welfare cases. With certain exceptions, "[o]nly evidence which is admissible under the rules of evidence applicable to the trial of civil cases shall be admitted" in an adjudicatory hearing. Iowa Code § 232.96(3). At dispositional hearings, the juvenile court must admit "all relevant and material evidence." *Id.* § 232.99(2); *see id.* § 232.104(1)(c) (directing courts to conduct permanency hearings in "substantial conformance" with section 232.99).

On appeal, Brynn insists the exhibits admitted "en masse" did not meet the test for relevance and materiality.[4] She argues the State "proceeded to casually refer to the entire group of recordings throughout the proceeding in an effort to support random statements made by the State's witnesses." She asks for a new hearing, untainted by these recordings.

We share Brynn's concern about the wholesale admission of the unedited recordings. Sure, the jail log of calls may be relevant to refute Brynn's

---

[4] Evidence is relevant if "[i]t has any tendency to make a fact more or less probable than it would be without the evidence"; and "[t]he fact is of consequence in determining the action." Iowa R. Evid. 5.401. "Materiality concerns the fit between the evidence and the case. It looks to the relation between the propositions that the evidence is offered to prove and the issues in the case." 1 McCormick on Evidence § 185 (8th ed. Jan. 2020 update).

representations to DHS that she was not continuing her unhealthy relationship with Mason. Even some of the content may have been material to show Brynn was insincere in her commitment to breaking her past cycles of drug and alcohol abuse. But more than ninety minutes of these free-wheeling conversations no doubt injects irrelevant and immaterial information into the record.

That said, we decline to send the case back for another hearing. The juvenile court does not mention the recordings in its termination order. Plus, we arrive at the same result as did the juvenile court, without resort to the objectionable exhibits. *See In re Adkins*, 298 N.W.2d 273, 278 (Iowa 1980) (finding, where juvenile court did not follow procedure to admit evidence, challenger did not show prejudice because supreme court reached the same conclusion absent the improperly admitted evidence). "Our de novo review shows us that without this evidence, the juvenile court had more than enough proof of the elements necessary to support its decision to terminate [Brynn's] parental rights." *In re T.C.*, 492 N.W.2d 425, 429–30 (Iowa 1992). From there, we segue to Brynn's challenge to the statutory ground for termination.

***Clear and convincing evidence.*** The juvenile court granted the State's petition to terminate based on Iowa Code section 232.116(1)(h). That alternative authorizes termination of parental rights when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.[5]

Iowa Code § 232.116(1)(h).

Brynn limits her challenge to the fourth element, whether the State could safely return J.B. to her care. She alleges "the State failed to provide clear and convincing evidence that J.B. would suffer imminent harm or be in danger" if returned to her custody. She emphasizes that she has not used drugs, other than alcohol, since September 2019. She also stresses that she has "maintained a residence and employment." And she calls the issue of domestic violence a "red herring"—an issue given little attention by the DHS until the termination hearing.

In response, the State recounts Brynn's struggle to maintain sobriety when outside of a controlled setting, like jail or an inpatient treatment facility. Case in point, Brynn consumed alcohol to the point of blacking out in October 2020, less than two months before the termination hearing. Adding to the concern, Brynn chooses to work at an establishment featuring alcohol sales, where she experienced a lapse in her sobriety. In the same spirit of downplaying risks, the State points out that Brynn "has failed to cut ties with Mason" despite their troubled history.

The State has the stronger argument. The record evidence, even minus the jail recordings, offered clear and convincing proof that Brynn was not ready to resume full-time parenting of a two-year-old child. Her continued consumption and

---

[5] "[A]t the present time" is measured by the date of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (citing *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010)).

exposure to alcohol creates an appreciable danger to J.B. and supports the termination of her parental rights. *See In re L.B.*, No. 18-1017, 2018 WL 3650370, at \*1 (Iowa Ct. App. Aug. 1, 2018) (collecting cases affirming termination when parent has history of unresolved substance abuse). Likewise, her chronic connection with Mason risks a return to the toxic patterns that led to J.B.'s removal from their care. This risk is not a "red herring" as Brynn suggests, only one that abated because Mason was incarcerated for much of the CINA case. Yet the frequency of their contact while Mason was in jail worried the DHS case worker. And then Brynn testified that she accepted Mason's marriage proposal in September 2020, conditioned "on him staying clean." Like the juvenile court, we find "no evidence to indicate the cycle of domestic violence and drug use will not continue in the future." Termination was proper under Iowa Code section 232.116(1)(h).

*Reasonable efforts.* In passing, Brynn argues the DHS did not make reasonable efforts to help her reunify with J.B. True, the State must provide "reasonable services" to preserve the family. *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999). But the parent also bears responsibility "to demand other, different, or additional services" before the termination hearing. *In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015). Brynn does not specify what services were missing or when she requested them.[6] On this record, we cannot reach this issue. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct App. 2005) (concluding mother did not

---

[6] Brynn bemoans the impact that COVID-19 restrictions had on in-person visitation, but does not identify any demand that she made for different or expanded services.

preserve error on reasonable-efforts claim because she failed to request other services).

*Guardianship alternative.* Finally, Brynn argues the juvenile court should have placed J.B. in a guardianship with her mother rather than terminating parental rights. Typically, guardianships are not preferred over termination as a legal alternative. *In re A.S.*, 906 N.W.2d 467, 476–77 (Iowa 2018). We found an exception when a ten-year-old child lived with his grandmother, and the mother and grandmother enjoyed "a close, mature, and healthy relationship that is free of conflict." *In re B.T.*, 894 N.W.2d 29, 34–35 (Iowa Ct. App. 2017). The situation here was different. The record shows Brynn and her mother had ongoing conflicts, and J.B. was just a toddler who needed a stable, permanent home for many years to come. On these facts, termination was a better permanency plan for the child.

We find no cause to reverse the juvenile court's decision.

**AFFIRMED.**